Ralph J. Moody
vs.  }M. P. 1691.
Alliance Nationale

### DECISION.

#### August 14, 1934.

CARPENTER, J. This is a petition for a writ of mandamus to compel the respondent, a mutual benefit society, to reinstate the petitioner as a member. It alleges in substance that on September 7, 1933, the respondent issued to the petitioner a certificate in the sum of $500.00; that subsequently, on November 2, 1933, a certificate of insurance in the sum of $3000.00 was also issued to him; that the petitioner was also enrolled in the sick benefit fund; that on December 5, 1933, the petitioner fell sick and received sick benefits up to January 31, 1934; that on the last mentioned date he was expelled without cause from the respondent society; that his expulsion was decreed by an act of the president general of the respondent society, acting under the provisions of a by-law which gave him the power to veto the admission of an applicant; that said by-law was invalid and illegal, and hence the veto exercised by the president general was legally ineffective, null and void.

It appeared from the evidence that the petitioner was a resident of West Warwick, and the respondent is a mutual benefit society organized under the federal laws of the Dominion of Canada and duly licensed to do business in the State of Rhode Island; that on August 17, 1933, the petitioner, Ralph J. Moody, signed an application for membership in the respondent society, and on the same day he underwent a medical examination by Dr. Robert St. Jacques. His application was forwarded to the Home Office of the respondent, together with a presentation card signed by Moody on August 19, 1933, and was subsequently approved by the chief medical examiner of the society. In his application Moody requested insurance in the sum of $1500.00 and $5.00 weekly sick benefits.

On September 7 following the respondent granted the weekly sick benefits and issued to Moody two insurance certificates, one in the sum of $1000.00 and the other in the sum of $500.00 At the same time it delivered to him a copy of the by-laws and a receipt book. It is admitted, and documentary proof is on record showing that Moody received in due course the two certificates, the receipt book and the copy of the by-laws. Subsequently, these two certificates and the $5.00 weekly benefits were abandoned by Moody and cancelled by the society.

On the 18th of October, 1933 Moody signed a new presentation card, and on the 20th he signed a new application seeking to double the amount of insurance and the weekly sickness indemnity which he had applied for two months before. On the day that he signed a new application for membership he underwent a second medical examination at the hands of Dr. Robert St. Jacques, which examination was subsequently approved by the chief medical examiner of the respondent society. On the strength of this medical examination the respondent issued to Moody on November 2, 1933, a certificate in the sum of $3000.00, and granted him weekly sick benefits of $10.00. It is established by documentary proof and admitted by Moody that this certificate was duly delivered to him together with a new receipt book and another copy of the by-laws of the society. This certificate and a copy of said by-laws are in evidence.

On December 5 following Moody was taken ill, and on the 28th Moody filed with the respondent a claim for sick indemnity and a certificate of ill-

ness signed by his own doctor, stating that he was suffering from grippe, bronchitis and tachicardia, and there being on the face of the certificate nothing suggestive of the unusual, the respondent granted and paid the indemnity. Towards the last days of the following January, the respondent received another claim covering the period from December 26 to January 23, and another certificate of illness also signed by Moody's own doctor, giving Moody's illness as endocarditis, a heart disease. When this last certificate of illness came in due course to the attention of the president general, the latter formed the opinion that Moody must have had some previous illness which he had concealed from the medical examiner, and he accordingly vetoed Moody's admission, giving him formal notice thereof, and ordered that an investigation be made at once.

The evidence showed that within two years after an applicant has applied for admission to the society and has been admitted, the president general may veto his admission. In other words, he may cancel all of his insurance. The petitioner claims that the right of veto cannot be exercised without cause and without allowing a hearing to the petitioner.

This Court is of the opinion that before a person becomes an absolute member of the society, two years must have elapsed. That is, at any time within two years the president general may veto his admission, and upon the exercise of the veto the person ceases to be a member. The petitioner argues that this veto cannot be exercised without reason. The Court finds that there was ample reason in this particular case to exercise the veto power. The president general felt that the society had been deceived, and the Court feels that he was justified in his belief.

Petition for writ of mandamus is denied.

For petitioner: Sidney L. Rabinowitz, Esquire, Archambault & Archambault.

For respondent: Eugeue L. Jalbert.